# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Mark D. Altier, Gary E. Samouris, and Nida Edith Samson, individually and on behalf of all others similarly situated

**DEFENDANTS**
ZF-TRW Automotive Holdings Corp., TRW Automotive U.S. LLC, American Honda Motor Co., Inc., and Toyota Motor Sales, U.S.A., Inc.

**(b)** County of Residence of First Listed Plaintiff  San Diego County, California
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Shea Aiello, PLLC              Kessler Topaz Meltzer & Check, LLP
26100 American Dr., 2nd Floor   280 King of Prussia Road
Southfield, MI 48034; (248) 354-0224   Radnor, PA 19087 (pending pro hac vice)

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [x] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [x] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 480 Consumer Credit |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| | | | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | [ ] 895 Freedom of Information Act |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 U.S.C. § 1332(d)(2), 15 U.S.C. § 2301, et seq.,

Brief description of cause:
This action concerns defective airbag control units manufactured and/or equipped in vehicles manufactured by Defendants.

## VII. REQUESTED IN COMPLAINT:
- [x] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE
April 26, 2019

SIGNATURE OF ATTORNEY OF RECORD
*David J. Shea*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?        ☐ Yes
                                                                    ■ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____


2.        Other than stated above, are there any pending or previously        ☐ Yes
          discontinued or dismissed companion cases in this or any other      ■ No
          court, including state court? (Companion cases are matters in which
          it appears substantially similar evidence will be offered or the same
          or related parties are present and the cases arise out of the same
          transaction or occurrence.)

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____


Notes :

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| Gary E. Samouris and Nida Edith Samson, individually and on behalf of all others similarly situated, | Civil Action No. |
| | Hon. |
| Plaintiffs, | |
| v. | |
| ZF-TRW Automotive Holdings Corp., TRW Automotive U.S. LLC, American Honda Motor Co., Inc., and Toyota Motor Sales, U.S.A., Inc., | |
| Defendants. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................... 1

II. JURISDICTION AND VENUE ............................................. 6

III. PARTIES ........................................................................... 7

    A. Plaintiffs ................................................................... 7

    B. ACU Manufacturer Defendants ............................... 7

    C. Vehicle Manufacturer Defendants ........................... 8

IV. FACTUAL ALLEGATIONS ................................................10

    A. The Class Vehicles ....................................................10

    B. The ACU Defect ........................................................11

    C. Defendants' Knowledge of the ACU Defect and Associated
       Safety Risks ...............................................................18

V. TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL .....19

VI. CLASS ACTION ALLEGATIONS .......................................21

VII. CLAIMS FOR RELIEF .......................................................25

VIII. PRAYER FOR RELIEF ......................................................64

IX. DEMAND FOR JURY TRIAL .............................................65

i

The allegations herein are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to all other matters based on an investigation by counsel.[1]

## I.    INTRODUCTION

1.    Airbags are a critical safety component in virtually every motor vehicle sold in the United States and throughout the world.   Drivers and passengers reasonably expect that airbags will properly deploy if their vehicles are involved in an accident.   When functioning properly, an airbag can mean the difference between life and death.

2.    This action concerns defective airbag control units (ACUs) manufactured by Defendants ZF TRW Automotive Holdings Corp. ("ZF TRW") and TRW Automotive U.S. LLC ("TRW US") (collectively "TRW"), which are part of airbag systems equipped in vehicles manufactured by American Honda Motor Co., Inc., ("Honda") and Toyota Motor Sales, U.S.A., Inc., ("Toyota") (together, the "Vehicle Manufacturers") (collectively with TRW, "Defendants").

3.    ACUs are designed and manufactured to sense a vehicle crash, determine whether airbag deployment is necessary, and deploy appropriate airbags

---

[1]     Counsel's investigation includes an analysis of publicly available information, including investigations by the National Highway Traffic Safety Administration ("NHTSA"), vehicle recalls, and additional analysis.   Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

and other supplemental restraints where needed. The ACU contains an electronic component—an application specific integrated circuit ("ASIC")—which monitors signals from other crash sensors located in the Class Vehicles. If the ASIC fails, the ACU will not operate properly.

4.     As a result of an electrical overstress ("EOS") condition that causes the malfunction of the ASIC in the ACUs manufactured by TRW (the "ACU Defect"), the airbags equipped in the Class Vehicles (defined below) do not properly deploy during a crash. The ACU Defect exposes Plaintiffs and Class members to the serious and life-threatening safety risk that their Class Vehicle airbags could fail to deploy during an accident, resulting in injury or death.

5.     Numerous personal injury and wrongful death lawsuits have been filed against TRW and/or the Vehicle Manufacturers alleging that airbags failed to deploy in accidents as a result of the ACU Defect. Despite knowledge of the ACU Defect, TRW has continued to manufacture and sell the defective ACUs, resulting numerous injuries and deaths. In addition, the Vehicle Manufacturers have continued to equip the Class Vehicles with airbag systems containing the ACU Defect and sell and lease the Class Vehicles, without disclosing the ACU Defect and its corresponding safety risks to Plaintiffs and Class members.

6.     In March 2018, NHTSA's Office of Defects Investigation ("NHTSA ODI") opened a preliminary evaluation ("PE") investigation into the ACU Defect

based on six frontal crashes, reported via Early Warning Reporting between 2012 and 2017, where airbags did not deploy.[2]  These crashes resulted in six injuries and four deaths.

7.     While the PE investigation focused on certain Hyundai Motor America ("Hyundai") and Kia Motors America ("Kia") vehicles containing the ACU Defect, NHTSA ODI identified ZF-TRW as the supplier of the defective ACUs, putting the Vehicle Manufacturers on notice of the ACU Defect.  NHTSA ODI described the ACU defect as follows: "[f]ailure of the air bag control unit may prevent the frontal air bags from deploying in the event of a crash."[3]

8.     As explained by NHTSA ODI, in February 2018, Hyundai reported that "post-collision inspections of the air bag control units (ACUs) showing that an electrical overstress condition (EOS) of an ACU electronic component occurred in three of the crashes, and that the fourth ACU is under evaluation for the same concern."[4]  Hyundai further reported that it had "not identified a remedy for this recall, and state[d] that the cause of the EOS is being investigated with the ACU supplier, ZF-TRW."[5]

---

[2]     Exhibit A, NHTSA, ODI Resume, Investigation EA 18-003 Mar. 16, 2018, https://static.nhtsa.gov/odi/inv/2018/INOA-PE18003-9810.PDF.

[3]     *Id.*

[4]     *Id.*

[5]     *Id.*

9.     Thereafter, on April 19, 2019, NHTSA ODI upgraded its PE investigation into the ACU Defect to an Engineering Analysis and expanded the investigation to include TRW and the Vehicle Manufacturers, as well as certain other car manufacturers.[6]  According to NHTSA, TRW supplied the defective ACUs to Defendants Honda and Toyota as well as FCA US LLC ("FCA"), Hyundai, Kia, and Mitsubishi Motors North America, Inc. ("Mitsubishi").[7]  NTSHA ODI estimates that 12.3 million vehicles contain the ACU Defect.

10.     Plaintiffs Gary E. Samouris and Nida Edith Samson ("Plaintiffs") and members of the Classes assert claims against Defendants for violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, fraudulent concealment, breach of express and implied warranties, unjust enrichment and state consumer fraud/unfair trade practices.

11.     No reasonable consumer expects to purchase or lease a Class Vehicle that contains a concealed ACU Defect that poses a safety risk that an airbag will not deploy during an accident. The ACU Defect is material to Plaintiffs and members of the Classes because when they purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' would be

---

[6]     Exhibit B, NHTSA, ODI Resume, Investigation EA 19-001, Apr. 19, 2019, https://static.nhtsa.gov/odi/inv/2019/INOA-EA19001-2536.PDF.

[7]     *See id.*

free from defects and contain an ACU and airbag system that properly functioned. Had Defendants disclosed the ACU Defect, Plaintiffs and members of the Classes would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

12.    Indeed, Defendants knowingly, actively, and affirmatively omitted and/or concealed the existence of the ACU Defect from Plaintiffs and members of the Classes.   Knowledge and information regarding the ACU Defect and the associated safety risk was in the exclusive and superior possession of Defendants, and was not disclosed to Plaintiffs and members of the Classes, who could not reasonably discover the defect through due diligence.   Based on pre-production testing, design failure mode analysis, wrongful death and personal injury lawsuits, post-collision inspections, vehicle owner questionnaires, and NHTSA investigations, *inter alia*, Defendants were aware of the ACU Defect and fraudulently concealed the defect from Plaintiffs and members of the Classes.

13.    Notwithstanding this knowledge, TRW continued selling defective ACUs and the Vehicle Manufacturers continued selling Class Vehicles equipped with airbag systems containing the ACU Defect, Defendants failed to disclose the existence of the ACU Defect to Plaintiffs and members of the Classes and have not remedied the ACU Defect and/or compensated Plaintiffs or members of the Classes for this material defect.   In addition, the Vehicle Manufacturer Defendants have not

5

issued recalls for the Class Vehicles containing the ACU Defect.  Rather, Defendants wrongfully and intentionally concealed the ACU Defect from Plaintiffs and members of the Classes.

14.    As a direct result of Defendants' conduct, Plaintiffs and members of the Classes have been harmed and are entitled to actual damages, including damages for diagnosis, repair and/or replacement costs, damages for the diminished value of their vehicles, compensatory, statutory and punitive damages, attorneys' fees, costs, restitution, and injunctive and declaratory relief.

## II.    JURISDICTION AND VENUE

15.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Classes, members of the Classes (as defined below) are citizens of states different from Defendant, and greater than two-thirds of the members of the Classes reside in states other than the state in which Defendant is a citizen.  This Court has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367 and jurisdiction over the Magnuson Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

16.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because the TRW Defendants maintain their corporate headquarters in this District, because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, including the design and manufacture of the defective ACUs, and because Defendants conduct a substantial amount of business in this District.  Accordingly, Defendants have sufficient contacts with this District to subject Defendants to personal jurisdiction in the District and venue is proper.

## III.   PARTIES

### A.   Plaintiffs

17.     Plaintiff Nida Edith Samson is a citizen of the Commonwealth of Pennsylvania and resides in Media, Pennsylvania.  In 2015, Plaintiff Samson purchased a 2012 Honda CR-V in Pennsylvania, for personal, family, or household purposes.  Plaintiff Samson's Class Vehicle is equipped with an airbag system containing the ACU Defect.

18.     Plaintiff Gary E. Samouris is a citizen of the state of Nevada and resides in Las Vegas, Nevada.  In 2018, Plaintiff Samouris purchased a 2018 Toyota Tacoma in Nevada, for personal, family, or household purposes.  Plaintiff Samouris's Class Vehicle is equipped with an airbag system containing the ACU Defect.

### B.   ACU Manufacturer Defendants

7

19.    Defendant ZF-TRW Automotive Holdings Corp. ("ZF-TRW") is a Delaware corporation, with its corporate headquarters located in Livonia, Michigan.

20.    Defendant TRW Automotive U.S. LLC ("TRW Automotive") is a Delaware limited liability company, with its corporate headquarters located in Livonia, Michigan.

21.    ZF TRW and TRW Automotive (collectively, the "TRW Defendants") design, manufacture, and sell automotive systems, modules, and components to automotive original equipment manufacturers, including airbag systems.  The TRW Defendants engage in interstate commerce by selling automotive systems throughout the United States, including within this District.

22.    At all times relevant to this action, the TRW Defendants and/or their agents manufactured, distributed, sold, and warranted airbag systems containing the ACU Defect, as described herein, throughout the United States.

23.    On information and belief, at all times relevant to this action, the TRW Defendants made decisions related to design, manufacturing, marketing, sales, warranties, and recalls of the airbag systems containing the ACU Defect from their Livonia, Michigan headquarters, which are located within this District.

## C.    Vehicle Manufacturer Defendants

24.     Defendant American Honda Motor Co., Inc., ("Honda") is a California corporation, with its corporate headquarters located at 1919 Torrance Boulevard, Torrance, California 90501.

25.     Honda designs, engineers, manufactures, markets and/or sells vehicles under the Honda and Acura brands in Michigan and throughout the United States, through its network of authorized motor vehicle dealers.  Honda engages in interstate commerce by selling vehicles through its authorized dealers located in every state of the United States, including within this District.

26.     Defendant Toyota Motor Sales, U.S.A., Inc., ("Toyota") is a California corporation, with its corporate headquarters located at 6565 Headquarters Drive, Plano, Texas 75024.

27.     Toyota designs, engineers, manufactures, markets and/or sells vehicles under the Toyota brand in Michigan and throughout the United States, through its network of authorized motor vehicle dealers.  Toyota engages in interstate commerce by selling vehicles through its authorized dealers located in every state of the United States, including within this District.

28.     Honda and Toyota together are referred to herein as the "Vehicle Manufacturer Defendants."  At all times relevant to this action, the Vehicle Manufacturer Defendants and/or their agents manufactured, distributed, sold, leased, and warranted the Class Vehicles throughout the United States.

9

## IV.   FACTUAL ALLEGATIONS

### A.   The Class Vehicles

29.   The affected airbag systems containing the ACU Defect include those manufactured by TRW and subject to investigation by NHTSA ODI.  These airbag systems contain ACUs that suffer from EOS—an electrical overstress condition that causes electric components in the ACUs to malfunction—resulting in failure of airbags and other supplemental restraints to deploy when Class Vehicles suffer an impact.  As a result of the ACU Defect, the airbag systems pose unreasonably dangerous safety risks to Plaintiffs and members of the Classes, including the risk of injury and death.

30.   All Class Vehicles are equipped with an airbag system containing the ACU Defect.  "Class Vehicles" refers to the following affected vehicles: 2014-2019 Acura RLX; 2014-2019 Acura RLX HYBRID; 2012-2014 Acura TL; 2015-2017 Acura TLX; 2012-2014 Acura TSX; 2014 Acura TSX SPORT WAGON; 2012-2013 Acura TSX SPORTSWAGON; 2013-2015 Honda ACCORD; 2014-2015 Honda ACCORD HYBRID; 2012-2015 Honda CIVIC; 2012-2015 Honda CIVIC GX; 2012-2015 Honda CIVIC HYBRID; 2012-2015 Honda CIVIC SI; 2012-2016 Honda CR-V; 2012-2017 Honda FIT; 2013-2014 Honda FIT EV; 2012-2014 Honda RIDGELINE; 2012-2018 Toyota AVALON; 2013-2018 Toyota AVALON HYBRID; 2011-2019 Toyota COROLLA; 2017-2018 Toyota COROLLA IM;

10

2011-2013 Toyota COROLLA MATRIX; 2012-2017 Toyota SEQUOIA; 2012-2019 Toyota TACOMA; and 2012-2017 Toyota TUNDRA.

31.     TRW supplied the Vehicle Manufacturers with the defective ACUs and the Vehicle Manufacturers equipped the Class Vehicles with airbag systems containing the ACU Defect, which Defendants did not disclose to Plaintiffs or members of the Classes.

32.     Despite their knowledge of the ACU Defect and corresponding safety risks, the Vehicle Manufacturers have not recalled the Class Vehicles.

**B.     The ACU Defect**

33.     The airbag systems in the Class Vehicles contain ACUs which sense vehicle crashes and evaluate whether airbag deployment is necessary in the event of an impact.[8] The ACU is located in the Class Vehicles' passenger compartments and is electrically connected to crash sensors located at the front of the Class Vehicles. *Id.* Based on the results of the sensor, the ACU will deploy the appropriate airbag and other safety restraints to protect drivers and passengers from an accident or impact. *Id.*

---

[8]     *See* Exhibit B, NHTSA ODI Resume, Investigation EA 19-001.

34.     For illustrative purposes, below is a schematic representation of a 2012 Toyota Corolla airbag system:[9]



35.     The ACU contains an electronic component—an application specific integrated circuit ("ASIC")—which monitors signals from other crash sensors located in the Class Vehicles.  If the ASIC fails, the ACU will not operate properly and airbags and other supplemental restraints will not deploy when needed.  *See* NHTSA ODI Resume, Investigation EA 19-001.

---

[9]     ALLDATA AUTOMOTIVE INTELLIGENCE, http://www.alldata.com (last visited Apr. 25, 2019).

36.     According to NHTSA ODI, in the airbag systems in the Class Vehicles, the ACUs are experiencing electrical overstress due to harmful electrical signals, which then damages the ASIC.  *Id.*  This causes the ACUs to stop working, and as a result, the proper airbag and supplemental restraints are not being deployed during a crash—subjecting Plaintiffs and members of the Classes to injury and death.

37.     The ACU is intended to have electrical wiring and circuitry that prevents the transmission of harmful signals that may damage the ASIC.  *Id.*  Upon information and belief, the ACUs in the Class Vehicles do not contain sufficient ASIC protection to avoid electrical overstress, which results in failure of the airbags to deploy when needed.

38.     As discussed above, NHTSA opened an initial investigation on March 16, 2018 into the ACU Defect, which, at that time, had caused front air bags to fail to deploy in numerous crashes, resulting in at least six injuries and four deaths.[10] The PE investigation identified certain vehicles manufactured by Kia and Hyundai, which contained defective ACUs manufactured by TRW.  *Id.*

39.     At that time, NHTSA ODI indicated certain Kia vehicles "also use similar ACU's supplied by ZF-TRW" and there was "a prior recall, 16V-668 where

---

[10]     Exhibit A, NHTSA ODI Resume, Investigation EA 18-003.

EOS appeared to be a root cause of air bag non-deployment in significant frontal crashes in certain Fiat Chrysler vehicles."

40.     While the PE investigation focused on certain Hyundai and Kia vehicles containing the ACU Defect, NHTSA ODI identified ZF-TRW as the supplier of the defective ACUs, putting the Vehicle Manufacturers on notice of the ACU Defect.

41.     As a result of the PE investigation, Kia and Hyundai instituted recalls of certain vehicles affected by the ACU Defect, including 2010-2013 Kia Fortes; 2010-2013 Kia Forte Koups; 2011-2013 Kia Optimas; 2011-2013 Kia Optima Hybrids; 2011-2012 Kia Sedonas; 2011-2012 Hyundai Sonatas; and 2011-2013 Hyundai Sonata Hybrids.[11]

42.     The ACU Defect is described as follows in Kia recall: "The recalled vehicles are equipped with an Advanced Airbag System ("AAS").  The airbag control unit ("ACU") in these vehicles may be susceptible to electrical overstress ("EOS") during certain frontal crash events."[12]  The Kia recall further described the cause of the defect as "the ASIC component within the subject ACUs may be susceptible to EOS due to inadequate circuit protection" and explained the safety risk as follows: "[i]f the ASIC becomes damaged, the front airbags and seatbelt

---

[11]     *See* Exhibits C and D, Kia and Hyundai recalls.

[12]     *See* Exhibit C, Kia recall.

pretensioners may not deploy in certain frontal crashes where deployment may be necessary, thereby increasing the risk of injury."[13]

43.     FCA also issued a recall for certain vehicles containing the ACU Defect in September 2016, disclosing that the EOS condition resulted in a failure of the ASIC, which caused airbag non-deployment.[14] To date, none of the Class Vehicles have been recalled.

44.     On April 19, 2019, NHTSA upgraded its investigation of the ACU Defect to an Engineering Analysis.  Such an upgrade of an NHTSA investigation occurs only after particular criteria are met signifying the need for an enhanced investigation.[15]

45.     An Engineering Analysis entails "a more detailed and complete analysis of the character and scope of the alleged defect," building on the information collected during the initial investigation.  *Id.*  As a result of an Engineering Analysis, NHTSA may recommend a safety recall or work with a manufacturer to issue a safety recall.  *Id.*

---

[13]     *Id.*

[14]     *See* Exhibit E, FCA recall.

[15]     *See* NHTSA, *Motor Vehicle Defects and Safety Recalls: What Every Vehicle Owner Should Know*, https://www-odi.nhtsa.dot.gov/recalls/documents/MVDefects andRecalls.pdf (Revised Aug. 2017).

46.    NHTSA upgraded the investigation into the ACU Defect in order to expand the scope of affected vehicles to include the Class Vehicles, *inter alia*, and include the TRW Defendants in the investigation.[16]

47.    The ACU Defect poses a significant safety risk to Plaintiffs and Class members and NHTSA has documented numerous crashes causing injuries, including several fatalities. *Id.*[17]

48.    Most recently, NHTSA ODI "identified two substantial frontal crash events (one fatal) involving Toyota products where EOS is suspected as the likely cause of the non-deployments."[18]  As explained by NHTSA ODI, "[t]he crashes involved a MY 2018 and a MY 2019 Corolla equipped with the subject ACU that incorporated higher levels of ASIC protection" where "both ACUs were found to be non-communicative (meaning the ACU could not be read with an Event Data Recorder) after the crash, a condition found in other cases where EOS occurred with other OEMs."[19]

---

[16]    Exhibit B, NHTSA ODI Resume, Investigation EA 19-001.

[17]    *See also* Tom Krisher, *US Expands Probe Into ZF-TRW Air Bag Failures to 12.3M Vehicles*, NBC LOS ANGELES (Apr. 23, 2019, 6:36 AM), https://www.nbclos angeles.com/news/national-international/US-Expands-ZF-TRW-Air-Bag-Failure-Probe-508942951.html.

[18]    Exhibit B, NHTSA ODI Resume, Investigation EA 19-001.

[19]    *Id.*

49. The defective airbag systems were designed, engineered and manufactured by the TRW Defendants with design and/or manufacturing flaws that cause the ACU Defect and casus the airbags and other supplemental restraints to not deploy in a crash.   By designing, manufacturing, assembling, inspecting, distributing, and/or selling defective ACUs and/or Class Vehicles equipped with airbag systems containing the ACU Defect, Defendants rendered the Class Vehicles unsafe for their intended use and purpose.

50. Upon information and belief, the ACU Defect was caused, among other things, by TRW's design, manufacture or assembly of the ACUs.

51. As alleged herein, Plaintiffs and members of the Classes unknowingly purchased or leased Class Vehicles that contain the ACU Defect and suffered diminished market value, did not receive the benefit of their bargain, and suffered other damages related to their purchase or lease of the Class Vehicles as a direct result of Defendants' misrepresentations and/or omissions regarding the standard, quality or grade of the Class Vehicles and/or the existence of the ACU Defect and its associated safety risks.   The fact that the Class Vehicles suffer from the ACU Defect is material to Plaintiffs and members of the Classes because it diminishes the value of the Class Vehicles and exposes drivers and passengers of the Class Vehicles to unreasonable safety risks.

52.     As a result of Defendants' material omissions, including their failure to disclose the presence of the ACU Defect in the Class Vehicles, Defendants have caused Plaintiffs and members of the Classes to suffer actual damages, including but not limited to out-of-pocket expenses and the diminished value of their vehicles.

## C.     Defendants' Knowledge of the ACU Defect and Associated Safety Risks

53.     Defendants fraudulently, intentionally, and/or recklessly concealed from Plaintiffs and members of the Classes the ACU Defect even though Defendants knew or should have known that defects in design, manufacturing, materials and/or workmanship were causing the ACU Defect if Defendants had adequately tested the airbag systems in the Class Vehicles.

54.     Knowledge and information regarding the ACU Defect were in the exclusive and superior possession of Defendants, and that information was not provided to Plaintiffs and members of the Classes.  Based on pre-production testing, preproduction design or failure mode analysis, production design or failure mode analysis, post-collision inspections, NHTSA investigations, wrongful death and personal injury lawsuits, and early consumer complaints made to Defendants' network of vehicle manufacturers, *inter alia*, Defendants were aware (or should have been aware) of the ACU Defect in the Class Vehicles and fraudulently concealed the ACU Defect and safety risks from Plaintiffs and members of the Classes.

55.     Defendants fraudulently, intentionally, negligently and/or recklessly omitted and concealed from Plaintiffs and members of the Classes the ACU Defect even though Defendants knew or should have known of design and/or manufacturing defects in the airbag systems in the Class Vehicles.

56.     Defendants knew, or should have known, that the ACU Defect and associated safety risks were material to owners and lessees of the Class Vehicles and were not known or reasonably discoverable by Plaintiffs and members of the Classes before they purchased or leased Class Vehicles, or before the warranties on their Class Vehicles expired.

57.     Defendants gained their knowledge of the ACU Defect through sources not available to Plaintiffs and members of the Classes.  Notwithstanding Defendants' exclusive and superior knowledge of the ACU Defect, the Vehicle Manufacturer Defendants failed to disclose the defect to consumers at the time of purchase or lease of the Class Vehicles (or any time thereafter) and continued to sell Class Vehicles containing the ACU Defect.

## V.     TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL

58.     Any applicable statute of limitations has been tolled by Defendants' knowing and active concealment of the ACU Defect and the misrepresentations and omissions alleged herein.  Through no fault or lack of diligence, Plaintiffs and members of the Classes were deceived regarding the Class Vehicles and could not

reasonably discover the ACU Defect or Defendants' deception with respect to the defect.

59.     Plaintiffs and members of the Classes did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants were concealing a defect and/or that the Class Vehicles contained an ACU Defect and corresponding safety risk.  As alleged herein, the existence of the ACU Defect was material to Plaintiffs and members of the Classes at all relevant times.  Within the time period of any applicable statutes of limitations, Plaintiffs and members of the Classes could not have discovered through the exercise of reasonable diligence the existence of the ACU Defect, the associated safety risk, or that Defendants were concealing the defect.

60.     At all times, Defendants are and were under a continuous duty to disclose to Plaintiffs and members of the Classes the true standard, quality and grade of the Class Vehicles and to disclose the ACU Defect and corresponding safety risks.

61.     Defendants knowingly, actively and affirmatively concealed the facts alleged herein.  Plaintiffs and members of the Classes reasonably relied on Defendants' knowing, active, and affirmative concealment.

62.     For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendants' fraudulent concealment, and

Defendants are estopped from relying on any statutes of limitations in defense of this action.

## VI.  CLASS ACTION ALLEGATIONS

63.  Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and/or (b)(3) on behalf of the following Class and Sub-Classes:

> **Nationwide Class**: All persons or entities in the United States who purchased, leased or own a Class Vehicle (the "Nationwide Class" or "Class");

> **Pennsylvania Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the Commonwealth of Pennsylvania and all persons or entities in the Commonwealth of Pennsylvania who purchased, leased or own a Class Vehicle (the "Pennsylvania Sub-Class");

> **Nevada Sub-Class**: All persons or entities who purchased or leased a Class Vehicle in the State of Nevada and all persons or entities in the State of Nevada who purchased, leased or own a Class Vehicle (the "Nevada Sub-Class"); (collectively with the and the Pennsylvania Sub-Class, the "Sub-Classes").

64.  Excluded from the Class and Sub-Classes are Defendants and their parents, subsidiaries and corporate affiliates.  Plaintiffs reserve the right to revise the definitions of the Class and the Sub-Classes based upon subsequently discovered information and reserve the right to establish additional subclasses where appropriate.  The Class and the Sub-Classes are collectively referred to herein as the "Classes."

65. The Classes are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are at least thousands of proposed members of the Classes throughout the United States.

66. Common questions of law and fact exist as to all members of the Classes and predominate over any issues solely affecting individual members of the Classes. The common and predominating questions of law and fact include, but are not limited to:

- Whether the Class Vehicles contain the ACU Defect;

- Whether Defendants violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;

- Whether Defendants violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-2, *et seq.*;

- Whether Defendants violated the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0903 *et seq.*;

- Whether the Vehicle Manufacturer Defendants were unjustly enriched by their conduct;

- Whether the ACU Defect is a design defect and/or a defect in material, manufacturing and/or workmanship;

- Whether the ACU Defect in the Class Vehicles presents a safety risk;

- Whether and when Defendants knew or should have known about the ACU Defect;

- Whether Defendants knew or should have known that the ACU Defect in Class Vehicles presents a safety risk;

- Whether Defendants had a duty to disclose the ACU Defect;

- Whether Defendants breached their duty to disclose the ACU Defect;

22

- Whether Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts concerning the standard, quality or grade of the Class Vehicles and/or the ACU Defect;

- Whether Defendants made material omissions concerning the standard, quality or grade of the Class Vehicles and/or the ACU Defect;

- Whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a Class Vehicle;

- Whether Defendants actively concealed material facts from Plaintiffs and members of the Classes;

- Whether Defendants breached their implied warranties to Plaintiffs and members of the Classes;

- Whether the Vehicle Manufacturer Defendants breached their express warranties to Plaintiffs and members of the Classes;

- Whether members of the Classes would pay less for a Class Vehicle if Defendants, at the time of purchase or lease, disclosed the ACU Defect and/or associated safety risks;

- Whether members of the Classes would have purchased or leased a Class Vehicle if Defendants, at the time of purchase or lease, disclosed the ACU Defect and/or associated safety risks;

- Whether damages, restitution, equitable, injunctive, compulsory or other relief is warranted.

67. Plaintiffs' claims are typical of the claims of the Classes Plaintiffs seek to represent. As alleged herein, Plaintiffs and the Classes sustained damages arising out of the same unlawful actions and conduct by Defendants.

68. Plaintiffs are willing and prepared to serve the Classes in a representative capacity with all of the obligations and duties material thereto.

Plaintiffs will fairly and adequately protect the interests of the Classes and have no interests adverse to or in conflict with the interests of the other members of the Classes.

69.     Plaintiffs' interests are co-extensive with and are not antagonistic to those of absent members within the Classes.  Plaintiffs will undertake to represent and protect the interests of absent members within the Classes and will vigorously prosecute this action.

70.     Plaintiffs have engaged the services of the undersigned counsel. Counsel is experienced in complex litigation, will adequately prosecute this action and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent members of the Classes.

71.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiffs know of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

72.     Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

73.     The Classes may also be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Classes, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Classes.

74.     The interests of members of the Classes in individually controlling the prosecution of separate actions is theoretical and not practical.  The Classes have a high degree of similarity and are cohesive, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

## VII.  CLAIMS FOR RELIEF

### COUNT I
**Violation of the Magnuson-Moss Warranty Act ("MMWA"),
15 U.S.C. § 2301, *et seq.* against All Defendants
(On behalf of the Nationwide Class or, alternatively,
on behalf of the Pennsylvania and Nevada Sub-Classes)**

75.     Plaintiffs incorporate and re-allege each preceding paragraph as though fully set forth herein.

76.     Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class, or, alternatively, on behalf of the Pennsylvania and Nevada Sub-Classes against all Defendants.

77.     Plaintiffs satisfy the MMWA jurisdictional requirement because they allege diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

78.     Plaintiffs and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

79.     Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

80.     The ACUs and Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

81.     The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

82.     Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give the Vehicle Manufacturer Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

83.     The Vehicle Manufacturer Defendants provided Plaintiffs and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  Under warranties provided to members of the Classes, the Vehicle Manufacturer Defendants promised to repair or replace covered defective components arising out of defects in materials and/or workmanship, including the ACU Defect, at no cost to owners and lessees of the Class Vehicles. As alleged herein, the Vehicle Manufacturer Defendants breached these warranties.

84.    Defendants provided Plaintiffs and Class members with implied warranties, including an implied warranty of merchantability, in connection with the purchase or lease of the Class Vehicles, whereby Defendants warranted that the ACUs and Class Vehicles were fit for their ordinary purpose as safe vehicles. The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

85.    Defendants breached these implied warranties by failing to disclose and fraudulently concealing information regarding the standard, quality or grade of the Class Vehicles and/or the presence of the ACU Defect and corresponding safety risks.   Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship that fails to operate as represented by Defendants and presents a safety risk, and therefore, the Class Vehicles are not fit for their ordinary purpose.

86.    Affording Defendants a reasonable opportunity to cure their breach of warranties would be unnecessary and futile.   At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew, or were reckless in not knowing, of the material omissions concerning the standard, quality or grade of the Class Vehicles and the presence of the ACU Defect and corresponding safety risks, but failed to repair or replace the ACU Defect and/or disclose the defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an

informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

87.     Plaintiffs and members of the Classes experienced the ACU Defect within the warranty periods but Defendants failed to inform Plaintiffs and members of the Classes of the existence of the ACU Defect and associated safety risk, and failed to provide a suitable remedy or repair of the ACU Defect free of charge within a reasonable time.

88.     Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here. Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in Defendants' warranty periods are also unconscionable and inadequate to protect Plaintiffs and members of the Classes.  Among other things, Plaintiffs and members of the Classes did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

89.    Plaintiffs and each of the other members of the Classes have had sufficient direct dealings with either the Vehicle Manufacturer Defendants or their agents (dealerships) to establish privity of contract.

90.    Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between the TRW Defendants and the Vehicle Manufacturer Defendants, and between the Vehicle Manufacturer Defendants and their dealers, and specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the ACU Defect.

91.    Plaintiffs and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiffs and members of the Classes have not re-accepted their Class Vehicles by retaining them.

92.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

93.     Plaintiffs, individually and on behalf of members of the Classes, seek equitable relief, restitution, and all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

## COUNT II
### Fraud by Omission or Fraudulent Concealment against the TRW Defendants
### (On behalf of the Nationwide Class or, alternatively,
### on behalf of the Pennsylvania and Nevada Sub-Classes)

94.     Plaintiffs incorporate and re-allege each preceding paragraph as though fully set forth herein.

95.     Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class, or, alternatively, on behalf of the Pennsylvania and Nevada Sub-Classes against the TRW Defendants.

96.     The TRW Defendants concealed and suppressed material facts regarding the defective airbag systems—most importantly, the ACU Defect, which causes, among other things, the defective airbag systems to fail to deploy during an accident.

97.     The TRW Defendants had a duty to disclose the ACU Defect because they:

    a.     Had exclusive and/or far superior knowledge and access to the facts regarding the ACU Defect than Plaintiffs and members of the Classes, and the TRW Defendants knew the facts were not

known to or reasonably discoverable by Plaintiffs and members of the Classes;

b.   Intentionally concealed the foregoing from Plaintiffs and members of the Classes; and

c.   Made incomplete representations about the safety and reliability of the defective ACUs and airbag systems and, by extension, the Class Vehicles, while purposefully withholding material facts from Plaintiffs and members of the Classes that contradicted these representations.

98.   These omitted and concealed facts were material because they would be relied on by a reasonable person purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and members of the Classes. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

99.   The TRW Defendants concealed and suppressed these material facts to falsely assure purchasers and consumers that its ACUs were capable of performing safely, as represented by the TRW Defendants and reasonably expected by consumers.

100.   The TRW Defendants actively concealed and/or suppressed these material facts, in whole or in part, to protect their profits and to avoid recalls that would hurt the brand's image and cost the TRW Defendants money.  The TRW Defendants concealed these facts at the expense of Plaintiffs and members of the Classes.

101.   Plaintiffs and members of the Class were unaware of these omitted material facts, and would not have acted as they did if they had known of the concealed and/or suppressed facts.

102.   Had they been aware of the defective ACUs and airbag systems and the TRW Defendants' callous disregard for safety, Plaintiffs and members of the Classes either would have paid less for their Class Vehicles or would not have purchased or leased them at all.  Plaintiffs and members of the Classes did not receive the benefit of their bargain as a result of the TRW Defendants' fraudulent concealment.

103.   Because of the concealment and/or suppression of the facts, Plaintiffs and members of the Classes sustained damage because they own vehicles that diminished in value as a result of the TRW Defendants' concealment of, and failure to timely disclose, the serious ACU Defect in millions of Class Vehicles and the serious safety and quality issues caused by the TRW Defendants' conduct.

104.   The value of all Class members' vehicles has diminished as a result of the TRW Defendants' fraudulent concealment of the defective ACUs. The ACU

Defect has made any reasonable consumer reluctant to purchase any of the Class Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

105.   Accordingly, the TRW Defendants are liable to the Class for their damages in an amount to be proven at trial.

106.   The TRW Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Classes' rights and well-being, and with the aim of enriching the TRW Defendants. The TRW Defendants' conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, placing others at risk of death and injury, and affecting public safety, warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
### Fraud by Omission or Fraudulent Concealment against the Vehicle Manufacturer Defendants
### (On behalf of the Nationwide Class or, alternatively, on behalf of the Pennsylvania and Nevada Sub-Classes)

107.   Plaintiffs incorporate and re-allege each preceding paragraph as though fully set forth herein.

108.   Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class, or, alternatively, on behalf of the Pennsylvania and Nevada Sub-Classes against the Vehicle Manufacturer Defendants.

109.   The Vehicle Manufacturer Defendants concealed and suppressed material facts regarding the Class Vehicles—most importantly, the fact that they were equipped with defective airbag systems containing the ACU Defect which, among other things causes airbags to fail to deploy during an accident.

110.   The Vehicle Manufacturer Defendants had a duty to disclose the ACU Defect because they:

a.   Had exclusive and/or far superior knowledge and access to the facts regarding the ACU Defect than Plaintiffs and members of the Classes, and the Vehicle Manufacturer Defendants knew the facts regarding the ACU Defect were not known to or reasonably discoverable by Plaintiffs and members of the Classes;

b.   Intentionally concealed the foregoing from Plaintiffs and members of the Classes; and

c.   Made incomplete representations about the safety and reliability of the Class Vehicles, while purposefully withholding material facts regarding the ACU Defect from Plaintiffs and members of the Classes that contradicted these representations.

34

111. These omitted and concealed facts were material because they would be relied on by a reasonable person purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and members of the Classes. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Plaintiffs and members of the Classes trusted the Vehicle Manufacturer not to sell or lease them vehicles that were defective or that violated federal law governing motor vehicle safety.

112. The Vehicle Manufacturer Defendants concealed and suppressed these material facts to falsely assure consumers that their Class Vehicles containing the defective airbag systems were capable of performing safely, as represented by the Vehicle Manufacturer Defendants and reasonably expected by consumers.

113. The Vehicle Manufacturer Defendants actively concealed and/or suppressed these material facts, in whole or in part, to protect their profits and to avoid recalls that would hurt the brand's image and cost the Vehicle Manufacturer Defendants money. The Vehicle Manufacturer Defendants concealed these facts at the expense of Plaintiffs and members of the Classes.

114. Plaintiffs and members of the Class were unaware of these omitted material facts, and would not have acted as they did if they had known of the concealed and/or suppressed facts.

115.   Had they been aware of the ACU Defect and the Vehicle Manufacturer Defendants' callous disregard for safety, Plaintiffs and members of the Classes either would have paid less for their Class Vehicles or would not have purchased or leased them at all.  Plaintiffs and members of the Classes did not receive the benefit of their bargain as a result of the Vehicle Manufacturer Defendants' fraudulent concealment.

116.   Because of the concealment and/or suppression of the facts, Plaintiffs and members of the Classes sustained damage because they own vehicles that diminished in value as a result of the Vehicle Manufacturer Defendants' concealment of, and failure to timely disclose, the serious ACU Defect in the Class Vehicles and the serious safety and quality issues caused by the Vehicle Manufacturer Defendants' conduct.

117.   The value of all Class members' Class Vehicles has diminished as a result of the Vehicle Manufacturer Defendants' fraudulent concealment of the ACU Defect. Any reasonable consumer would be reluctant to purchase any of the Class Vehicles as a result of the ACA Defect, let alone pay what otherwise would have been fair market value for the vehicles.

118.   Accordingly, the Vehicle Manufacturer Defendants are liable to Plaintiffs and members of the Classes for damages in an amount to be proven at trial.

119.   The Vehicle Manufacturer Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of

Plaintiffs' and the Classes' rights and well-being, and with the aim of enriching the Vehicle Manufacturer Defendants. The Vehicle Manufacturer Defendants' conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, placing others at risk of death and injury, and affecting public safety, warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT IV**
**Unjust Enrichment against the Vehicle Manufacturer Defendants**
**(On behalf of the Nationwide Class or, alternatively,**
**on behalf of the Pennsylvania and Nevada Sub-Classes)**

120.   Plaintiffs incorporate and re-allege each preceding paragraph as though fully set forth herein.

121.   Plaintiffs bring this count on behalf of themselves and the members of the Nationwide Class, or, alternatively, on behalf of the Pennsylvania and Nevada Sub-Classes against the Vehicle Manufacturer Defendants.

122.   The Vehicle Manufacturer Defendants have received and retained a benefit from the Plaintiffs and members of the Classes and inequity has resulted.

123.   The Vehicle Manufacturer Defendants benefitted through their unjust conduct, by selling Class Vehicles that contain defective airbag systems with the ACU Defect and a concealed safety-and-reliability related defect, at a profit, for more than the Class Vehicles were worth, to Plaintiffs and members of the Classes, who overpaid for these defective airbag systems by overpaying for their Class

Vehicles, and/or would not have purchased Class Vehicles at all; and who have been forced to pay other costs.

124.   It is inequitable for the Vehicle Manufacturer Defendants to retain these benefits.

125.   Plaintiffs and members of the Classes do not have an adequate remedy at law.

126.   As a result of the Vehicle Manufacturer Defendants' conduct, the amount of their unjust enrichment should be disgorged, in an amount to be proven at trial.

## COUNT V
## Breach of the Pennsylvania Implied Warranty of Merchantability, 13 PA. Stat. Ann. §2314, against All Defendants
## (On behalf of the Pennsylvania Sub-Class)

127.   Plaintiff Samson incorporates and re-alleges each preceding paragraph as though fully set forth herein.

128.   Plaintiff Samson brings this count on behalf of herself and the members of the Pennsylvania Sub-Class against all Defendants.

129.   Defendants are and were at all relevant times merchants with respect to motor vehicles and/or ACUs within the meaning of 13 Pa. Stat. Ann. § 2104.

130.   A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition was implied by law in Class Vehicle transactions, pursuant to 13 Pa. Stat. Ann. § 2314.

38

131.  The Class Vehicles and/or the defective ACUs installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and ACUs are used. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and supplemental restraints during in accident.

132.  Defendants were provided notice of these issues by their knowledge of the issues, by numerous complaints and lawsuits filed against them and/or others, and by internal and NHTSA investigations, *inter alia*.

133.  As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiff Samson and the Pennsylvania Sub-Class have been damaged in an amount to be proven at trial.

## COUNT VI
**Pennsylvania Breach of Express Warranty, 13 Pa. Cons. Stat. §§ 2313 and 2A210, against the Vehicle Manufacturer Defendants**
**(On behalf of the Pennsylvania Sub-Class)**

134.  Plaintiff Samson incorporates and re-alleges each preceding paragraph as though fully set forth herein.

135.  Plaintiff Samson brings this count on behalf of herself and the members of the Pennsylvania Sub-Class against the Vehicle Manufacturer Defendants.

136.  The Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 13 Pa. Cons. Stat. § 2104 and 2A103(a), and "sellers" of motor vehicles under § 2103(a).

137.   With respect to leases, the Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

138.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. § 2105(a), and 2A103(a).

139.   In connection with the purchase or lease of each one of its new vehicles, the Vehicle Manufacturer Defendants provide express warranties.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota also provides a New Vehicle Limited Warranty for period of three years or 36,000 miles, whichever occurs first and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.

140.   The Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Samson and members of the Pennsylvania Sub-Class purchased or leased their Class Vehicles.

141.   The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiff Samson and members of Pennsylvania Sub-Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer

40

Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform Plaintiff Samson and members of the Pennsylvania Sub-Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to Plaintiff Samson and members of the Pennsylvania Sub-Class.

142.   Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

143.   Plaintiff Samson and members of the Pennsylvania Sub-Class could not have reasonably discovered the ACU Defect.

144.   The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

145.   The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects which cause airbags that do not perform as warranted.

146. Specifically, on information and belief, the Vehicle Manufacturer Defendants breached their express warranties by: (1) knowingly providing Plaintiff Samson and members of the Pennsylvania Sub-Class with Class Vehicles containing defects in material that were never disclosed to Plaintiff Samson and members of the Pennsylvania Sub-Class, (2) failing to repair or replace the defective Class Vehicles at no cost within the warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by the Vehicle Manufacturer Defendants.

147. Plaintiff Samson and members of the Pennsylvania Sub-Class have given the Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranties or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by the Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

148. Thus, the Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of Plaintiff Samson and the members of the Pennsylvania Sub-Class are not limited to the warranties' remedies.

149.   The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems for Plaintiff Samson and the members of the Pennsylvania Sub-Class free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

150.   Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Samson and members of the Pennsylvania Sub-Class. Among other things, Plaintiff Samson and the members of the Pennsylvania Sub-Class did not determine these time limitations, the terms of which unreasonably

favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and Plaintiff Samson and members of the Pennsylvania Sub-Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

151.   Further, the limited warranties promising to repair and/or correct a manufacturing defect fails in their essential purpose because the contractual remedies are insufficient to make Plaintiff Samson and the other members of the Pennsylvania Sub-Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

152.   The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiff Samson and members of the Pennsylvania Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

153.   Plaintiff Samson and members of the Pennsylvania Sub-Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

154.  As a direct and proximate result of the Vehicle Manufacturer Defendants' breach of express warranties, Plaintiff Samson and members of the Pennsylvania Sub-Class have been damaged in an amount to be determined at trial.

155.  Finally, because of the Vehicle Manufacturer Defendants' breach of express warranties as set forth herein, Plaintiff Samson and members of the Pennsylvania Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Samson and members of the Pennsylvania Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**COUNT VII**
**Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 *et seq.*, against All Defendants (On behalf of the Pennsylvania Sub-Class)**

156.  Plaintiff Samson incorporates and re-alleges each preceding paragraph as though fully set forth herein.

157.  Plaintiff Samson brings this count on behalf of herself and the members of the Pennsylvania Sub-Class against all Defendants.

158.  The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including: (i) "Representing that goods or services have … characteristics, …. Benefits or qualities that they do not have;" (ii) "Representing that goods or services are of a

45

particular standard, quality or grade … if they are of another;:" (iii) "Advertising goods or services with intent not to sell them as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4).

159. Defendants engaged in deceptive trade practices that violated the Pennsylvania CPL, including representing that Class Vehicles and/or the defective airbag systems installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; advertising them with the intent not to sell or lease them as advertised; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

160. In the course of their business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

161. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the defective airbag systems installed in them.

162.   Defendants have known of the ACU Defect in its defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

163.   By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Pennsylvania CPL. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

164.   In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

165.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to

47

and did in fact deceive reasonable consumers, including Plaintiff Samson and members of the Pennsylvania Sub-Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

166.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead Plaintiff Samson and members of the Pennsylvania Sub-Class.

167.   Defendants knew or should have known that their conduct violated the Pennsylvania CPL.

168.   As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

169.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

170.    Defendants owed Plaintiff Samson and members of the Pennsylvania Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

a.    Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.    Intentionally concealed the foregoing from Plaintiffs; and/or

c.    Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

171.    Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

172.    Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to Plaintiff Samson and members of the Pennsylvania Sub-Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable

vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

173. Plaintiff Samson and members of the Pennsylvania Sub-Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, Plaintiff Samson and members of the Pennsylvania Sub-Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiff Samson and members of the Pennsylvania Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

174. Defendants' violations present a continuing risk to Plaintiff Samson and members of the Pennsylvania Sub-Class, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

175. As a direct and proximate result of Defendants' violations of the Pennsylvania CPL, Plaintiff Samson and members of the Pennsylvania Sub-Class have suffered injury-in-fact and/or actual damage.

176. Defendants are liable to Plaintiff Samson and members of the Pennsylvania Sub-Class for treble their actual damages or $100, whichever is

greater, and attorneys' fees and costs. 73 P.S. § 201-9.2(a).  P Plaintiff Samson and members of the Pennsylvania Sub-Class are also entitled to an award of punitive damages given that Defendants' conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

**COUNT VIII**
**Nevada Breach of Implied Warranty of Merchantability, Nev. Rev. Stat.**
**§ 104.2314, against All Defendants**
**(On behalf of the Nevada Sub-Class)**

177.   Plaintiff Samouris incorporates and re-alleges each preceding paragraph as though fully set forth herein.

178.   Plaintiff Samouris brings this count on behalf of himself and the members of the Nevada Sub-Class against all Defendants.

179.   Defendants are and were at all relevant times merchants with respect to motor vehicles and/or airbags within the meaning of Nev. Rev. Stat. § 104.2104(1).

180.   A warranty that the Class Vehicles and/or the defective airbag systems installed in them were in merchantable condition was implied by law in Class Vehicle transactions, pursuant to Nev. Rev. Stat. § 104.2314.

181.   The Class Vehicles and/or the defective airbag systems installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and airbags are used. Specifically, they are inherently defective and dangerous in that the defective airbag systems fail to deploy during accidents.

182.   Defendants were provided notice of these issues by their knowledge of the issues, by numerous complaints filed against them and/or others, and by internal and NHTSA investigations.

183.   As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the Nevada Sub-Class have been damaged in an amount to be proven at trial.

## COUNT IX
### Nevada Breach of Express Warranty, N.R.S. §§ 104.2313 and 104A.2210, against the Vehicle Manufacturer Defendants
### (On behalf of the Nevada Sub-Class)

184.   Plaintiff Samouris incorporates and re-alleges each preceding paragraph as though fully set forth herein.

185.   Plaintiff Samouris brings this count on behalf of himself and the members of the Nevada Sub-Class against the Vehicle Manufacturer Defendants.

186.   The Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.R.S. § 104.2104(1) and 2A103(a), and "sellers" of motor vehicles under § 104.2103(1)(c).

187.   With respect to leases, the Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under N.R.S. § 104A.2103(1)(p).

188.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.R.S. §§ 104.2105(1) and 104A.2103(1)(h).

52

189.   In connection with the purchase or lease of each one of its new vehicles, the Vehicle Manufacturer Defendants provide express warranties.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota also provides a New Vehicle Limited Warranty for period of three years or 36,000 miles, whichever occurs first and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.

190.   The Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Samouris and members of the Nevada Sub-Class purchased or leased their Class Vehicles.

191.   The ACU Defect in the defective airbag system systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiff Samouris and members of the Nevada Sub-Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform Plaintiff Samouris and members of the Nevada Sub-Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement

of the defective airbag systems to Plaintiff Samouris and members of the Nevada Sub-Class.

192.   Because of the ACU Defect, Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

193.   Plaintiff Samouris and members of the Nevada Sub-Class could not have reasonably discovered the ACU Defect.

194.   The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

195.   Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects which cause airbags that do not perform as warranted.

196.   Specifically, on information and belief, Defendants breached their express warranties by: (1) knowingly providing Plaintiff Samouris and members of the Nevada Sub-Class with Class Vehicles containing defects in material that were

never disclosed to Plaintiff Samouris and members of the Nevada Sub-Class, (2) failing to repair or replace the defective Class Vehicles at no cost within the warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by the Vehicle Manufacturer Defendants.

197. Plaintiff Samouris and members of the Nevada Sub-Class have given Defendants a reasonable opportunity to cure their breach of express warranties or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

198. Thus, the Vehicle Manufacturer Defendants' written warranties fail of its essential purpose and the recovery of Plaintiff Samouris and members of the Nevada Sub-Class are not limited to its remedies.

199. The Vehicle Manufacturer Defendants were provided notice of the defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the defective airbag systems

and, on information and belief, have refused to repair or replace the defective airbag systems for Plaintiff Samouris and members of the Nevada Sub-Class free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

200.   Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Samouris and members of the Nevada Sub-Class. Among other things, Plaintiff Samouris and the members of the Nevada Sub-Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and Plaintiff Samouris and members of the Nevada Sub-Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

201.   Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is

insufficient to make Plaintiff Samouris and members of the Nevada Sub-Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

202.   The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiff Samouris and members of the Nevada Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

203.   Plaintiff Samouris and members of the Nevada Sub-Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

204.   As a direct and proximate result of the Vehicle Manufacturer Defendants' breach of express warranties, Plaintiff Samouris and members of the Nevada Sub-Class have been damaged in an amount to be determined at trial.

205.   Finally, because of the Vehicle Manufacturer Defendants' breach of express warranties as set forth herein Plaintiff Samouris and members of the Nevada Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Samouris and members of the Nevada Sub-Class of the purchase or lease price of all Class Vehicles currently

owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT X
### Violation of the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 598.0903, et seq. against All Defendants (On behalf of the Nevada Sub-Class)

206. Plaintiff Samouris incorporates and re-alleges each preceding paragraph as though fully set forth herein.

207. Plaintiff Samouris brings this count on behalf of himself and the members of the Nevada Sub-Class against all Defendants.

208. The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, *et seq.* prohibits deceptive trade practices. Nev. Rev. Stat. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "9. Advertises goods or services with intent not to sell or lease them as advertised"; or "15. Knowingly makes any other false representation in a transaction."

209.   Defendants engaged in deceptive trade practices that violated the Nevada DTPA, including: knowingly representing that Class Vehicles and/or the defective airbag systems installed in them have uses and benefits which they do not have; representing that they are of a particular standard, quality, and grade when they are not; advertising them with the intent not to sell or lease them as advertised; representing that the subject of a transaction involving them has been supplied in accordance with a previous representation when it has not; and knowingly making other false representations in a transaction.

210.   Defendants' actions as set forth above occurred in the conduct of trade or commerce.

211.   In the course of their business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the defective airbag systems installed in them.

212.   Defendants have known of the ACU Defect in its defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

213.   By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Nevada DTPA. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

214.   In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

215.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to

and did in fact deceive reasonable consumers, including Plaintiff Samouris and members of the Nevada Sub-Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

216.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead Plaintiff Samouris and members of the Nevada Sub-Class.

217.   Defendants knew or should have known that their conduct violated the Nevada DTPA.

218.   As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

219.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

220.   Defendants owed Plaintiff Samouris and members of the Nevada Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.   Intentionally concealed the foregoing from Plaintiffs; and/or

c.   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

221.   Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

222.   Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to Plaintiff Samouris and members of the Nevada Sub-Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable

vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

223.   Plaintiff Samouris and members of the Nevada Sub-Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, Plaintiff Samouris and members of the Nevada Sub-Class either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiff Samouris and members of the Nevada Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

224.   Defendants' violations present a continuing risk to Plaintiff Samouris and members of the Nevada Sub-Class, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

225.   As a direct and proximate result of Defendants' violations of the Nevada DTPA, Plaintiff Samouris and members of the Nevada Sub-Class have suffered injury-in-fact and/or actual damage.

226.   Accordingly, Plaintiff Samouris and members of the Nevada Sub-Class seek their actual damages, punitive damages, an order enjoining Defendants' deceptive acts or practices, costs of Court, attorney's fees, and all other appropriate

and available remedies under the Nevada Deceptive Trade Practices Act. Nev. Rev. Stat. § 41.600.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court enter judgment against Defendants and in favor of Plaintiffs and the Classes, and award the following relief:

- An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Classes, and Plaintiffs' counsel as counsel for the Classes;

- An order awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful and unfair business conduct and practices alleged herein;

- Appropriate injunctive and equitable relief, including a recall of all Class Vehicles and return of monies paid for the Class Vehicles;

- A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

- An order awarding costs, restitution, disgorgement, punitive damages, statutory damages, treble damages and exemplary damages under applicable law, and compensatory damages for economic loss, diminished value and out-of-pocket costs in an amount to be determined at trial;

- An order awarding any applicable statutory and civil penalties;

- An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

- An award of costs, expenses, and attorneys' fees as permitted by law; and

- Such other or further relief as the Court may deem appropriate, just, and equitable.

## IX.  DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

DATED: April 26, 2019                  Respectfully submitted,

*/s/ David J. Shea*
David J. Shea
**SHEA AIELLO, PLLC**
26100 American Drive, 2nd Floor
Southfield, MI  48034
Tel.:  (248) 354-0224
david.shea@sadplaw.com

Joseph H. Meltzer
Melissa L. Troutner
Natalie Lesser
**KESSLER TOPAZ
MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel.:  (610) 667-7706
Fax:  (610) 667-7056
jmeltzer@ktmc.com
mtroutner@ktmc.com
nlesser@ktmc.com

James E. Cecchi
Caroline F. Bartlett
**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068

Tel:  (973) 994-1700
jcecchi@carellabyrne.com
cbartlett@carellabyrne.com

Paul J. Geller
Mark J. Dearman
**ROBBINS GELLER**
**RUDMAN & DOWD, LLP**
120 East Palmetto Park Road
Suite 500
Boca Raton, FL 33432
Phone: (561) 750-3000
Fax: (561) 750-3364
pgeller@rgrdlaw.com
mdearman@rgrdlaw.com

Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
cseeger@seegerweiss.com

*Attorneys for Plaintiffs and*
*the Proposed Classes*

# EXHIBIT A



**U.S. Department of Transportation**

**National Highway Traffic Safety Administration**

# ODI  RESUME

OFFICE OF DEFECTS INVESTIGATION

NHTSA

Authentic US Government Information
National Highway Traffic Safety Administration
uses a digital certificate to ensure
the content has remained unchanged

| | |
|---|---|
| **Investigation:** | PE 18-003 |
| **Date Opened:** | 03/16/2018 |
| **Investigator:** | Nathan Ong          **Reviewer:**     Paul Simmons |
| **Approver:** | Stephen Ridella |
| **Subject:** | Air bags may be disabled during crash |

## MANUFACTURER & PRODUCT INFORMATION

| | |
|---|---|
| **Manufacturer:** | Kia Motors America, Hyundai Motor America |
| **Products:** | 2012-2013 Kia Forte and 2011 Hyundai Sonata |
| **Population:** | 425,000 (Estimated) |
| **Problem Description:** | Failure of the air bag control unit may prevent the frontal air bags from deploying in the event of a crash. |

## FAILURE REPORT SUMMARY

| | ODI | Manufacturer | Total |
|---|---|---|---|
| **Complaints:** | 2 | TBD | TBD |
| **Crashes/Fires:** | 6 | TBD | TBD |
| **Injury Incidents:** | 5 | TBD | TBD |
| **Number of Injuries:** | 6 | TBD | TBD |
| **Fatality Incidents:** | 4 | TBD | TBD |
| **Number of Fatalities:** | 4 | TBD | TBD |
| **Other\*:** | 1 | TBD | TBD |

**\*Description of Other:** Early Warning Reporting (EWR) data as described below

## ACTION / SUMMARY INFORMATION

**Action:**   Open Preliminary Evaluation (PE)

**Summary:**

The Office of Defects Investigation (ODI) is currently aware of six crashes with significant collision related damage events involving Hyundai and Kia models where air bags failed to deploy in frontal crashes.  Four such crashes involved model year (MY) 2011 Hyundai Sonatas and two others involved MY 2012 and MY 2013 Kia Fortes.  The MY 2013 Forte crash occurred in Canada and the Forte was a Canadian market vehicle.  ODI learned of two crashes via Vehicle Owner Questionnaires (VOQ) filed in 2015 and 2016, and all six crashes were reported via Early Warning Reporting submitted between 2012 and 2017.  In total, the crashes resulted in four fatalities and six injuries.

On February 27, 2018, Hyundai filed a defect information report leading to NHTSA Recall No. 18V-137.  Hyundai indicates that the DIR stemmed from post-collision inspections of the air bag control units (ACUs) showing that an electrical overstress condition (EOS) of an ACU electronic component occurred in three of the crashes, and that the fourth ACU is under evaluation for the same concern.  Hyundai has not identified a remedy for this recall, and states that the cause of the EOS is being investigated with the ACU supplier, ZF-TRW.  ODI's current understanding is that the above Kia products also use similar ACUs supplied by ZF-TRW.  Additionally, ODI is aware of a prior recall, 16V-668 where EOS appeared to be a root cause of air bag non-deployment in significant frontal crashes in certain Fiat Chrysler vehicles.

Under the investigation, ODI will evaluate the scope of Hyundai's recall, confirm Kia's use of the same or similar ZF-TRW ACU, review the root cause analysis of all involved parties, and review and evaluate pertinent vehicle and/or ACU factors that may be contributing to, or causing EOS failures.  Additionally, ODI will determine if any other vehicle

manufacturers used the same or similar ACUs, as supplied by ZF-TRW, and if so, evaluate whether the field experience of these vehicles indicates potentially related crash events.

The above VOQs can be reviewed at NHTSA.gov under identification numbers 10781050 and 10849839.

# EXHIBIT B



**U.S. Department of Transportation**

**National Highway Traffic Safety Administration**

# ODI  RESUME

OFFICE OF DEFECTS INVESTIGATION

**NHTSA**

Authentic US Government information
National Highway Traffic Safety Administration
uses adigital certificateto ensure
the content has remained unchanged

| | |
|---|---|
| **Investigation:** | EA 19-001 |
| **Prompted by:** | PE 18-003 |
| **Date Opened:** | 04/19/2019 |
| **Investigator:** | Brian Smith       **Reviewer:**   Scott Yon |
| **Approver:** | Stephen Ridella |
| **Subject:** | Air Bag ACU Electrical Overstress |

## MANUFACTURER & PRODUCT INFORMATION

| | |
|---|---|
| **Manufacturer:** | Kia Motors America, Chrysler (FCA US LLC), Mitsubishi Motors North America, Inc., Hyundai Motor America, TRW Automotive Inc, Honda (American Honda Motor Co.), Toyota Motor Corporation |
| **Products:** | Various MY 2010 to 2019 vehicles w/ZF air bag control unit |
| **Population:** | 12,300,000 (Estimated) |
| **Problem Description:** | Certain FCA, Honda, Hyundai, Kia, Mitsubishi and Toyota vehicles are equipped with an air bag control unit produced by TRW (ZF), which could fail during a crash event resulting in non-deployment of air bags and seat belt pretensioners.  These control units may suffer electrical overstress due to harmful signals (electrical transients) produced by the crash event, causing the unit to stop working during the crash. |

## FAILURE REPORT SUMMARY

| | ODI | Manufacturer | Total |
|---|---|---|---|
| **Complaints:** | 0 | TBD | TBD |
| **Crashes/Fires:** | 2 | TBD | TBD |
| **Injury Incidents:** | 1 | TBD | TBD |
| **Number of Injuries:** | 2 | TBD | TBD |
| **Fatality Incidents:** | 1 | TBD | TBD |
| **Number of Fatalities:** | 1 | TBD | TBD |
| **Other*:** | 1 | 1 | TBD |

***Description of Other:** One crash event was identified by ZF and one was identified by ODI through monitoring insurance salvage facility (public) web sites.  Each involved Toyota vehicles, and neither was filed as a Vehicle Owner's Questionnaire.

## ACTION / SUMMARY INFORMATION

**Action:**   Upgrade PE18-003 to an Engineering Analysis and expand the scope of the investigation to include the Tier-one supplier and any manufacturers who installed this unit in production vehicles.

**Summary:**

The Office of Defects Investigation (ODI) is expanding the investigation to include the equipment supplier and vehicle manufacturers (OEMs) using this unit.  The investigation focuses on ACUs manufactured by TRW, now ZF-TRW (ZF) , the Tier-one supplier to Hyundai and Kia and the other affected OEMs.  The ACU senses a vehicle crash to determine whether air bag deployment is required, and if so, deploys the appropriate air bags and other supplemental restraints.  ZF supplied subject ACUs to six OEMs: FCA, Honda, Hyundai, Kia, Mitsubishi and Toyota.

Internal to the ACU is an electronic component (an application specific integrated circuit, or ASIC) that monitors signals from crash sensors.  A failure of the ASIC may prevent deployment of the required air bags and devices, or may otherwise affect the proper operation of the ACU.  The ACU is located in the passenger compartment, and electrical wiring connects the ASIC to sensors located at the front of the vehicle.  ODI's current understanding is that a crash event may, in and of itself, produce harmful signals on the sensor wiring capable of damaging the ASIC,

although the probability of this occurring appears to be low.  While the ACU incorporates electrical circuitry intended to protect the ASIC from harmful signals, the level and effectiveness of the protective circuitry varies by OEM customer.

During PE18-003, Hyundai and Kia filed recalls (18V-137 and 18V-363 respectively) to address a defect that could result in ACU disablement and non-deployments.  According to the filings, the disablement occurs in certain types of frontal crash events.  Both filings discussed a condition known as electrical overstress (EOS) that affected the subject ASIC and was likely caused by electrical signals that entered the ACU via sensor wiring.  The recalled vehicles used ACUs that had the lowest levels of ASIC protection while non-recalled Hyundai and Kia products using subject ACUs had higher levels of protection.  ODI has not identified any EOS failures in the non-recalled Kia and Hyundai populations.

In September 2016, FCA filed recall 16V-668 for certain model year (MY) 2010 to 2014 Chrysler, Dodge and Jeep products also manufactured with the subject ACU.  In that filing, FCA also discussed an EOS condition that resulted in a failure of the subject ASIC, which caused air bag non-deployment. FCA noted that the defect condition had only been observed in vehicles equipped with sensor harnessing routed across the front of the vehicle.  Other FCA vehicles that also used the subject ACU, but not the cross-car harnessing, had not experienced EOS failures, despite similar time in service.  The recalled FCA vehicles used a mid-level form of ASIC protection.  Other FCA vehicles that did not use cross car wiring, or used higher levels of ASIC protection, have not been recalled.  ODI has not identified any EOS failures in the non-recalled FCA population.

Recently, ODI has identified two substantial frontal crash events (one fatal) involving Toyota products where EOS is suspected as the likely cause of the non-deployments.  The crashes involved a MY 2018 and a MY 2019 Corolla equipped with the subject ACU that incorporated higher levels of ASIC protection.  Additionally, both ACUs were found to be non-communicative (meaning the ACU could not be read with an Event Data Recorder) after the crash, a condition found in other cases where EOS occurred with other OEMs.  No other EOS events have been identified for other Toyota products (including Corolla models that used the subject ACU since MY 2011), or for the Honda and Mitsubishi vehicles that use the subject ACU.

ODI plans to evaluate the susceptibility of the subject ACU designs to electrical signals, as well as other vehicle factors that can either lead to, or reduce the likelihood of, an EOS event.  Additionally, ODI will evaluate whether an unreasonable risk exists that requires further field action.

# EXHIBIT C

# Part 573 Safety Recall Report          18V-363

| | |
|---|---|
| **Manufacturer Name :** | Kia Motors America |
| **Submission Date :** | JUN 01, 2018 |
| **NHTSA Recall No. :** | 18V-363 |
| **Manufacturer Recall No. :** | SC165 |



**NHTSA**
NATIONAL HIGHWAY TRAFFIC
SAFETY ADMINISTRATION

## Manufacturer Information :

Manufacturer Name : Kia Motors America
Address : 111 Peters Canyon Road
Irvine CA 92606
Company phone : 800-333-4542

## Population :

Number of potentially involved : 507,587
Estimated percentage with defect : 100 %

## Vehicle Information :

Vehicle 1 : 2010-2013 KIA FORTE
Vehicle Type : LIGHT VEHICLES
Body Style : ALL
Power Train : GAS
Descriptive Information : All 2010-2013 model year Forte vehicles produced from February 24, 2009 thru August 31, 2012.

All 2010-2013 model year Forte Koup vehicles produced from June 5, 2009 thru August 31, 2012.

All 2011-2013 model year Optima vehicles produced from August 12, 2010 thru August 31, 2012.

All 2011-2012 model year Optima Hybrid vehicles produced from February 15, 2011 thru August 31, 2012.

All 2011-2012 model year Sedona vehicles produced from March 3, 2010 thru August 14, 2012.

The recalled vehicles are equipped with an Advanced Airbag System ("AAS"). The airbag control unit ("ACU") in these vehicles may be susceptible to electrical overstress ("EOS") during certain frontal crash events. The recall population was determined based on a review of vehicle production records.

Production Dates : FEB 24, 2009 - AUG 31, 2012
VIN Range 1 : Begin : NR          End : NR          ☐ Not sequential

Vehicle 2 : 2011-2012 KIA OPTIMA HYBRID
Vehicle Type : LIGHT VEHICLES
Body Style : ALL
Power Train : HYBRID ELECTRIC

# Part 573 Safety Recall Report     18V-363

| | |
|---|---|
| Descriptive Information : | All 2010-2013 model year Forte vehicles produced from February 24, 2009 thru August 31, 2012. |
| | All 2010-2013 model year Forte Koup vehicles produced from June 5, 2009 thru August 31, 2012. |
| | All 2011-2013 model year Optima vehicles produced from August 12, 2010 thru August 31, 2012. |
| | All 2011-2012 model year Optima Hybrid vehicles produced from February 15, 2011 thru August 31, 2012. |
| | All 2011-2012 model year Sedona vehicles produced from March 3, 2010 thru August 14, 2012. |
| | The recalled vehicles are equipped with an Advanced Airbag System ("AAS"). The airbag control unit ("ACU") in these vehicles may be susceptible to electrical overstress ("EOS") during certain frontal crash events. The recall population was determined based on a review of vehicle production records. |
| Production Dates : | FEB 15, 2011 - AUG 31, 2012 |
| VIN Range  1 : Begin : | NR         End : NR             ☐ Not sequential |

| | |
|---|---|
| Vehicle  3 : | 2010-2013 KIA FORTE KOUP |
| Vehicle Type : | LIGHT VEHICLES |
| Body Style : | ALL |
| Power Train : | GAS |
| Descriptive Information : | All 2010-2013 model year Forte vehicles produced from February 24, 2009 thru August 31, 2012. |
| | All 2010-2013 model year Forte Koup vehicles produced from June 5, 2009 thru August 31, 2012. |
| | All 2011-2013 model year Optima vehicles produced from August 12, 2010 thru August 31, 2012. |
| | All 2011-2012 model year Optima Hybrid vehicles produced from February 15, 2011 thru August 31, 2012. |
| | All 2011-2012 model year Sedona vehicles produced from March 3, 2010 thru August 14, 2012. |
| | The recalled vehicles are equipped with an Advanced Airbag System ("AAS"). The airbag control unit ("ACU") in these vehicles may be susceptible to electrical overstress ("EOS") during certain frontal crash events.  The recall population was determined based on a review of vehicle production records. |
| Production Dates : | JUN 05, 2009 - AUG 31, 2012 |
| VIN Range  1 : Begin : | NR         End : NR             ☐ Not sequential |

# Part 573 Safety Recall Report       18V-363

|  |  |
|---|---|
| Vehicle 4 : | 2011-2013 KIA OPTIMA |
| Vehicle Type : | LIGHT VEHICLES |
| Body Style : | ALL |
| Power Train : | GAS |

Descriptive Information :

All 2010-2013 model year Forte vehicles produced from February 24, 2009 thru August 31, 2012.

All 2010-2013 model year Forte Koup vehicles produced from June 5, 2009 thru August 31, 2012.

All 2011-2013 model year Optima vehicles produced from August 12, 2010 thru August 31, 2012.

All 2011-2012 model year Optima Hybrid vehicles produced from February 15, 2011 thru August 31, 2012.

All 2011-2012 model year Sedona vehicles produced from March 3, 2010 thru August 14, 2012.

The recalled vehicles are equipped with an Advanced Airbag System ("AAS"). The airbag control unit ("ACU") in these vehicles may be susceptible to electrical overstress ("EOS") during certain frontal crash events.  The recall population was determined based on a review of vehicle production records.

Production Dates : AUG 12, 2010 - AUG 31, 2012

VIN Range  1 : Begin :          NR          End :   NR          ☐ Not sequential

|  |  |
|---|---|
| Vehicle 5 : | 2011-2012 KIA SEDONA |
| Vehicle Type : | LIGHT VEHICLES |
| Body Style : | ALL |
| Power Train : | GAS |

Descriptive Information :

All 2010-2013 model year Forte vehicles produced from February 24, 2009 thru August 31, 2012.

All 2010-2013 model year Forte Koup vehicles produced from June 5, 2009 thru August 31, 2012.

All 2011-2013 model year Optima vehicles produced from August 12, 2010 thru August 31, 2012.

All 2011-2012 model year Optima Hybrid vehicles produced from February 15, 2011 thru August 31, 2012.

All 2011-2012 model year Sedona vehicles produced from March 3, 2010 thru August 14, 2012.

The recalled vehicles are equipped with an Advanced Airbag System ("AAS"). The

# Part 573 Safety Recall Report          18V-363

airbag control unit ("ACU") in these vehicles may be susceptible to electrical overstress ("EOS") during certain frontal crash events. The recall population was determined based on a review of vehicle production records.

Production Dates : MAR 03, 2010 - AUG 14, 2012

VIN Range 1 : Begin : NR          End : NR          ☐ Not sequential

## Description of Defect :

Description of the Defect : The Airbag Control Unit ("ACU") detects crash severity and commands deployment of the advanced airbags and seatbelt pretensioners when necessary. The recalled vehicles are equipped with an ACU which contain a certain application-specific integrated circuit ("ASIC") that may be susceptible to electrical overstress ("EOS") during certain frontal crash events.

FMVSS 1 : NR

FMVSS 2 : NR

Description of the Safety Risk : If the ASIC becomes damaged, the front airbags and seatbelt pretensioners may not deploy in certain frontal crashes where deployment may be necessary, thereby increasing the risk of injury.

Description of the Cause : The ASIC component within the subject ACUs may be susceptible to EOS due to inadequate circuit protection.

Identification of Any Warning that can Occur : N/A

## Supplier Identification :

### Component Manufacturer

Name : ZF TRW

Address : 12001 Tech Center Drive
Livonia MICHIGAN 48150

Country : United States

## Chronology :

See attached document titled "Forte, Forte Koup, Optima, Optima Hybrid, Sedona ACU Chronology"

# Part 573 Safety Recall Report          18V-363

**Description of Remedy :**

| | |
|---|---|
| Description of Remedy Program : | Kia is currently evaluating a remedy for this recall.  Kia will reimburse owners for repair expenses already incurred pursuant to Kia's General Reimbursement Plan filed April 10, 2018. |
| How Remedy Component Differs from Recalled Component : | Kia is currently evaluating a remedy. |
| Identify How/When Recall Condition was Corrected in Production : | The ACU implemented into production from August 15, 2012 for the Sedona and from September 1, 2012 for the Forte, Forte Koup, Optima and Optima Hybrid have adequate circuit protection. |

**Recall Schedule :**

| | |
|---|---|
| Description of Recall Schedule : | The Dealer Notification is planned to begin and end on July 24, 2018. The Owner Notification is planned to begin and end of July 27, 2018. |
| Planned Dealer Notification Date : | JUL 24, 2018 - JUL 24, 2018 |
| Planned Owner Notification Date : | JUL 27, 2018 - JUL 27, 2018 |

\* NR - Not Reported

# EXHIBIT D

# Part 573 Safety Recall Report — 18V-137

| | |
|---|---|
| **Manufacturer Name :** | Hyundai Motor America |
| **Submission Date :** | FEB 27, 2018 |
| **NHTSA Recall No. :** | 18V-137 |
| **Manufacturer Recall No. :** | 174 |



**NHTSA**
NATIONAL HIGHWAY TRAFFIC
SAFETY ADMINISTRATION

## Manufacturer Information :

Manufacturer Name : Hyundai Motor America
Address : 10550 Talbert Avenue
Fountain Valley CA 92708
Company phone : 800-633-5151

## Population :

Number of potentially involved : 154,753
Estimated percentage with defect : 1 %

## Vehicle Information :

Vehicle 1 : 2011-2011 Hyundai Sonata
Vehicle Type : LIGHT VEHICLES
Body Style : 4-DOOR
Power Train : GAS
Descriptive Information : As of the date of this filing, Hyundai Motor America ("HMA") is aware of three airbag non-deployment allegations where Electrical Overstress ("EOS") was observed inside the vehicle's airbag control unit ("ACU"). The allegations are limited to early production Model Year 2011 Sonata vehicles produced by Hyundai Motor Manufacturing Alabama ("HMMA"). Therefore certain model year 2011 Hyundai Sonata vehicles produced between December 11, 2009 and September 29, 2010 at the Hyundai Motor Manufacturing Alabama ("HMMA") plant are included in this notification.

Production Dates : DEC 11, 2009 - SEP 29, 2010
VIN Range 1 : Begin : NR     End : NR     ☐ Not sequential

## Description of Defect :

Description of the Defect : The subject vehicles are equipped with an Airbag Control Unit ("ACU") which detects a crash signal and commands deployment of the airbags and seat belt pretensioner. In some airbag non-deployment allegations, electrical overstress ("EOS") was observed on an Application Specific Integrated Circuit ("ASIC") inside the ACU.

FMVSS 1 : NR
FMVSS 2 : NR
Description of the Safety Risk : If the ACU circuitry is damaged, the airbags and seat belt pretensioners may not deploy in some crashes where deployment is necessary, increasing the risk of injury.
Description of the Cause : As of the date of this filing, EOS was observed on an ASIC inside the ACU. Hyundai is actively investigating the cause of the EOS.

# Part 573 Safety Recall Report          18V-137

Identification of Any Warning   None
that can Occur :

**Supplier Identification :**

**Component Manufacturer**

Name :  ZF TRW

Address :  Active & Passive SafetyTechnology
12001 Tech Center Drive Livonia MICHIGAN 48150

Country :  United States

**Chronology :**

Please see Attachment A for the requested chronology.

**Description of Remedy :**

Description of Remedy Program :  HMA and HMC are actively investigating this issue with the ACU supplier and evaluating a remedy.  The remedy will be performed at no charge.

Hyundai will provide reimbursement to owners for repairs according to the plan submitted on November 2, 2016.

How Remedy Component Differs from Recalled Component :  Hyundai is actively evaluating a remedy.

Identify How/When Recall Condition was Corrected in Production :  Hyundai is actively evaluating a remedy.

**Recall Schedule :**

Description of Recall Schedule :  Hyundai is actively evaluating a remedy.

Planned Dealer Notification Date :  APR 20, 2018 - APR 20, 2018

Planned Owner Notification Date :  APR 20, 2018 - APR 20, 2018

\* NR - Not Reported

# EXHIBIT E



**OCCUPANT RESTRAINT CONTROLLER**

# IMPORTANT SAFETY RECALL

*S61 / NHTSA 16V-668*

This notice applies to your vehicle (VIN: xxxxxxxxxxxxxxxxx).

Dear: (Name)

This interim notice is sent to you in accordance with the National Traffic and Motor Vehicle Safety Act to inform you that your vehicle[1] requires a safety recall repair. FCA US has decided that a defect, which relates to motor vehicle safety, exists in certain **2010 Chrysler Sebring**, **2011-2014 Chrysler 200**, **2010-2014 Dodge Avenger**, **2010-2012 Dodge Caliber**, **2010-2014 Jeep® Compass and 2010-2014 Jeep Patriot** vehicles.

| | | |
|---|---|---|
| **YOUR ADDITIONAL OPTIONS** | *Why is my vehicle being recalled?* | The above vehicles may experience a loss of air bag and seat belt pretensioner deployment capability during a crash due to a shorting condition resulting in a negative voltage transient that travels to the Occupant Restraint Controller via the front impact sensor wires. |
| **1. RECOMMENDED OPTION** Visit **recalls.mopar.com to sign up for email or SMS notification** for when remedy parts become available. You will be asked to provide your Vehicle Identification Number (VIN), provided above | *What is the risk?* | **The potential loss of air bag and seat belt pretensioner deployment capability during a crash may increase the risk of injury in a crash.** |
| **2. Wait for FCA US to contact you** again, by mail, with a follow-up recall notice when remedy parts are available | *How do I resolve this important airbag issue?* | **The remedy for this condition is not currently available.** We are making every effort to finalize a remedy and obtain parts as quickly as possible, and will service your vehicle free of charge (parts and labor). |
| **3. Visit www.safercar.gov** for more information on recalls | *What do I need to do?* | **FCA US will contact you again, by mail, with a follow-up recall notice when the remedy and parts are available.** Once you receive your follow-up notice, simply contact your Chrysler, Jeep, Dodge or RAM dealer right away to schedule a service appointment[2]. Additional options for your next steps are included on the left side of this notification. We appreciate your patience. |
| **4. Call the FCA Recall Assistance Center at 1-800-853-1403.** An agent can sign you up for email or SMS notification for when remedy parts become available, or answer any other questions that you may have | | |

If you have already experienced this specific condition and have paid to have it repaired, you may visit www.fcarecallreimbursement.com to submit your reimbursement request online[3]. Once we receive and verify the required documents, reimbursement will be sent to you within 60 days. If you have had previous repairs performed and/or already received reimbursement, you may still need to have the recall repair performed.

We apologize for any inconvenience, but are sincerely concerned about your safety. Thank you for your attention to this matter.

Customer Care / Field Operations
FCA US LLC

*Note to lessors receiving this recall: Federal regulation requires that you forward this recall notice to the lessee within 10 days*

[1] If you no longer own this vehicle, please help us update our records. Call the FCA Recall Assistance Center at 1-800-853-1403 to update your information.
[2] If your dealer fails or is unable to remedy this defect without charge and within a reasonable time, you may submit a written complaint to the Administrator, National Highway Traffic Safety Administration, 1200 New Jersey Ave., S.E., Washington, DC 20590, or you can call the toll-free Vehicle Safety Hotline at 1-888-327-4236 (TTY 1-800-424-9153), or go to **safercar.gov**.
[3] You can also mail in your original receipts and proof of payment to the following address for reimbursement consideration: FCA US Customer Assistance, P.O. Box 21-8004, Auburn Hills, MI 48321-8007, Attention: Recall Reimbursement.